UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

```
******************************
In re:                            )    Chapter 13
        Mario & Tracey Bosse      )    Case No. 08-20476
             Debtors              )
******************************
```

**Memorandum of Decision**

I. Introduction

Before me is the debtors' counsel's fee application. The chapter 13 trustee has filed various objections. For reasons that will follow, I approve allowance of fees and expenses in the total amount of $4615.53. The trustee is directed to pay the remaining balance of the allowed fees concurrently with distributions to the secured creditor under the debtors' confirmed plan.

II. Procedural History

Mario and Tracy Bosse filed their joint chapter 13 petition[1] in May of 2008.[2] Their proposed plan (filed with the petition) was confirmed in due course, and their motion to allow and disallow claims (the "MAD") was granted on March 25, 2009, in accordance with local rules.

Counsel filed this application for compensation on March 10, 2009. The trustee objected to several entries itemizing time expended and tasks performed. The trustee also sought direction as to how approved fees would be paid under the terms of the confirmed plan and claims allowance order (i.e., timing of payment). Counsel met the trustee's

---

[1] Unless otherwise indicated, citations to statutory sections and to chapter numbers refer to those within the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code" or "Code").
[2] As required by § 329(a) and pursuant to Federal Rule of Bankruptcy Procedure 2016(b), the Bosses filed counsel's Disclosure of Compensation.

1

specific objections and asserted that allowed fees should be paid immediately, before further plan distributions were made to any creditors.

III.  Factual History

Counsel seeks $4903.83 in fees and expenses.  The objections raised by the trustee would result in a deduction of $494.80 from that total.  Counsel has consented to a $152.80 reduction, but disputes anything beyond that.

The trustee's objections and counsel's responses are detailed in the margin.[3]

The Bosses' MAD modified their confirmed plan to provide for total distributions of $21,855.  This included $1000 for attorney's fees,[4] an "administrative reserve" of $4035.73, the trustee's statutory fees of $2185.50, payments on secured claims totaling $13,903.55, and other amounts irrelevant to this discussion.  The MAD did not affect the confirmed plan's provision providing for monthly payments of $183.71 for 57 months to

---

[3]  On 6/18/08, 0.40 hour at $95/hour (total of $38), was billed as "Prepared amended schedule F and debtors' oath."  The trustee objects because no amendment to schedule F was ever filed.  Counsel responds that the document was in fact prepared, but not filed as it was ultimately not required.

On 5/1/08, 0.30 hour at $95/hour (total of $28.50), was billed as "Prepare Disclosure of Compensation," but the trustee asserts that this is a routine form that should not take a skilled paralegal more than 0.10 hour.  Counsel denies this assertion.

On 5/12/08, 0.20 hour at $160/hour (total of $32) and 0.20 hour at $95/hour (total of $19), were both billed for "Review of letter from National Foreclosure Relief," by an associate and paralegal, but the trustee asserts that only one such charge is necessary and reasonable.  Counsel denies this assertion.

On 5/12/08, 0.30 hour at $95/hour (total of $28.50), was billed as "Scan and email taxes and paystubs to trustee; docket with court," but the trustee asserts those activities are clerical in nature and do not require the services of a skilled paralegal.  Counsel denies this assertion.

On 6/6/08, 1.00 hour at $250/hour (total of $250), was billed as "Attendance at 341 meeting."  The trustee asserts that the case was straightforward and uncomplicated and that the meeting took no more than 15 minutes.  Counsel indicates that the billed time includes time spent in discussion with debtors before and after the meeting.

On 3/9/09, 1.50 hours at $100/hour (total of $150), were billed as "Preparation of fee app, noh, cos, and prop order," but the trustee objects that this amount seems excessive and should be reduced to 1.00 hour.  Counsel denies this assertion.

[4]  The trustee has already made interim distributions to counsel for this amount.

2

Meredith Village Savings Bank ("MVSB"), the Bosses' only secured creditor, in respect of its $13,643 secured claim, with balloon payment of the remaining balance at the end of the plan.[5]

The Bosses' plan anticipates that counsel's fees will be paid from its "administrative reserve."[6] Although the so-called reserve is intended to provide a source of payment of claims (including fees) entitled to administrative priority, it is not funded until administrative expenses have been approved. In other words, the administrative reserve does not represent an accruing account for paying administrative claims as they arise. Rather, it enables a debtor to account for payment of priority claims within his or her plan's contribution/distribution scheme, but it does not create a sinking fund against which administrative claims are drawn on allowance.

In the context of this case, the question arises whether, upon allowance of some measure of fees, the debtors' next plan payments will be diverted to satisfy those allowed fees before any further disbursements can be made in respect of MVSB's secured claim, or whether those fees will be paid in some other fashion.

IV. Discussion

A. Fee and Expense Allowance

Section 330 governs fee allowance for debtor's counsel. In pertinent part, it provides:

> (A) …the court shall not allow compensation for—
> (i) unnecessary duplication of services; or

---

[5] Doing the math, this means that MVSB is to receive $10,471.47 over 57 months, with $3171.53 due in the lump sum.

[6] Because of a retainer in the amount of $1500 received from the debtors pre-petition, and $1000 in interim disbursements from the trustee under the confirmed plan, as indicated in note 4, supra, the balance that will be due and owing for the fees and expenses which the court approves will be $2500 less than the total amount approved.

3

>    (ii) services that were not—
>       (I)   reasonably likely to benefit the debtor's estate; or
>       (II)  necessary to the administration of the case.
> (B) In a…chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.[7]

The "other factors set forth in this section" include:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[8]

Guided by the statute, and bearing in mind that "in determining the reasonableness of attorney's fees, a bankruptcy judge has broad discretion,"[9] I will reduce counsel's fee request by $135.50,[10] and will grant the fee application to the extent of $4615.53.[11]

---

[7] Section 330(a)(4).

[8] See § 330(a)(3).

[9] See In re Hutchins, 393 B.R. 257, 258 n.3 (Bankr. D. Me. 2008), quoting Zambrana v. King, 366 B.R. 264, 265 (D. Mass. 2007).

[10] The 0.40 hour spent preparing an amended schedule F, which was never filed, was not reasonably likely to benefit the debtors. Neither was it necessary to the administration of the case, and therefore this $38 entry will be disallowed.

   The 0.30 hour spent preparing counsel's Disclosure of Compensation was not unreasonable or excessive, and therefore the entire amount sought for this entry will be allowed.

   The 0.20 hour spent by a paralegal reviewing the letter from National Foreclosure Relief with an associate attorney was duplicative, and thus the amount of $19 will be disallowed for this entry.

4

B. Paying Fees Under the Plan

Section 1326(b)(1) provides that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid any unpaid claim of the kind specified in section 507(a)(2) of this title." Allowed attorney's fees for debtors' counsel are a claim of the kind specified in § 507(a)(2), via § 503(b).

The Bosses' confirmed plan commits them to pay MVSB a set amount ($183.71/month) on account of its secured claim for 57 months, and a final lump sum payment at the end of the plan. Thus, today's question is whether plan distributions to MVSB will be suspended so that the debtors can fund payment of their counsel's administrative claim for fees.[12]

---

The 0.30 hour spent scanning and e-mailing various documents encompasses tasks that are clerical in nature and thus part of counsel's overhead. The amount of $28.50 will be disallowed for this entry.
    The 1.00 hour charged by an attorney for attendance at the § 341 meeting was not unnecessary or unreasonable because it included time spent discussing the meeting with the debtors, as well as pro rated travel time. This entry will be allowed.
    The 1.50 hours charged by a paralegal for preparation of the fee application is excessive. An hour would be reasonable, and thus the amount of $50 will be disallowed for this entry.
[11] Counsel initially requested $4903.83 and consented to a reduction of $152.80. Subtracting another $135.50 leaves $4615.53 as the amount approved.
[12] Under either of the following approaches, amounts distributed to unsecured creditors would be the same because counsel's approved fees are to be paid from the administrative reserve in the confirmed plan; only the timing of such payments during the term of the plan would be affected. Payments to unsecured creditors are not explicitly scheduled in the plan, confirmation order or MAD, and the fact that administrative claims may be filed and paid out at any time following confirmation (with court approval)

If the plan's provision for paying the secured creditor were to take a backseat while counsel's fees were paid, it would take seven months to pay off the fees.[13] In the meantime, no distributions would be made to MVSB.[14] As a result, MVSB's secured claim would not being paid off by the end of the plan unless the Bosses tendered a substantially larger lump sum at the plan's end, or unless they increased their monthly payments above the level called for by their confirmed plan.[15]

Section 1327(a) is explicit that "[t]he provisions of a confirmed plan bind the debtor and each creditor…." Interrupting the distributions to MVSB runs afoul of § 1327(a), as the debtors' binding obligation to make a set monthly plan distribution to MVSB would go by the boards. Such treatment would effect a *sub rosa* plan modification, as it would "alter the amount of the distribution to a creditor whose claim is

---

necessarily means that a disruption in the timing of distributions on account of unsecured claims should be expected by such creditors.

[13] Of the approved amount of $4615.53, the balance still owing is $2115.53. See note 6, supra. After the trustee deducted his statutory commission of ten percent from the debtors' $375 plan payments, $337.50 would be left to disburse to counsel each month.

[14] Because MVSB did not object to confirmation of this plan, the "equal monthly amounts" provision of § 1325(a) is not implicated in this discussion.

[15] Simply adding the six skipped payments onto the end of the plan would mean that the scheduled monthly payments to MVSB would not be completed until the 64th month (without accounting for the lump sum payment required thereafter). The plan as confirmed has a term of 59 months.

6

provided for by the plan…."[16]  And the modification would be effected without compliance with § 1329(a) and Fed. R. Bankr. P. 3015.[17]

Such a modification would also implicate § 1325, which requires a confirmed plan to provide that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [a secured claim] is not less than the allowed amount of such claim."[18]  Interrupting MVSB's stream of payments would alter the present value of that stream, breaking the promise implicit in confirmation of the plan put forth by the Bosses.[19]

I cannot accept the proposition that § 1326(b)(1)'s provision for paying administrative expenses concurrently with payments to creditors under a plan dictates

---

[16] See § 1329(a)(3).  See also In re Balderas, 328 B.R. 707, 719 (Bankr. W.D. Tex. 2005) ("post-confirmation alterations in plan distributions can be seen as a *de facto* modification of the plan.")

[17] "A request to modify a plan pursuant to…§ 1329 of the Code shall identify the proponent and shall be filed together with the proposed modification.  The clerk…shall give the debtor, the trustee, and all creditors not less than 20 days notice by mail of the time fixed for filing objections and, if an objection is filed, the hearing to consider the proposed modification…" Fed. R. Bankr. P. 3015(g).  See also D.Me. LBR 3015-2 (requiring, among other things, consultation with the standing chapter 13 trustee regarding feasibility and permissibility of any proposed modification).

[18] See § 1325(a)(5)(B)(ii).

[19] See Balderas, 328 B.R. at 719.  To be clear, MVSB did not object to the plan proffered by the Bosses because, although it might well have been able to defeat confirmation, see supra note 14 and § 1325(a)(6), the plan proposed payments which, viewed pragmatically, were acceptable.

7

that payments to satisfy debtors' counsel's allowed fees trumps the debtors' own plan, particularly where doing so would run roughshod over other chapter 13 requirements.[20]

Does this mean that payment of counsel's fees goes to the back of the line? Of course not. That result would ignore § 1326(a)(6) altogether. Counsel's allowed fees can be paid "concurrently" without interrupting the plan's commitment to MVSB. The plan is adequately funded to permit payments of $153.79 a month toward the allowed fees.[21] The allowed fees will be paid off in fourteen months.

Although some courts have found the "plain meaning" of § 1326(b)(1) to require payment of administrative expenses in full before distributions to secured creditors,[22] the language is not nearly so "plain."[23] Neither is the "priority" of attorney's fees patently clear from the legislative history of § 1326(b)(1); both the House and Senate Reports discuss the statutory fees of the chapter 13 trustee but do not refer expressly to a debtor's attorney's fees.[24]

---

[20] Lending further support to the notion that administrative expenses may be paid over time is § 1322(a)(2), which expressly provides for deferred cash payments on account of any claims entitled to priority under § 507.
[21] Which is the amount left from the debtors' $375 monthly plan payments after deducting the $183.71 distributions to MVSB and the trustee's statutory commission.
[22] See, e.g., In re DeSardi, 340 B.R. 790, 808-09 (Bankr. S.D. Tex. 2006); In re Harris, 304 B.R. 751, 756-57 (Bankr. E.D. Mich. 2004).
[23] See Balderas, 328 B.R. at 718 n.15.
[24] See H.R.Rep. No. 95-595, 430 (1978) ("…before or at the time of each payment any outstanding administrative expenses any [sic] percentage fee due for a private standing chapter 13 trustee [are required to] be paid in full"); S.Rep. No. 95-989, 142 (1978)

8

Even if the statute or the legislative history were clearer, the Bosses' confirmed plan committed them to pay MVSB $183.71 a month for 57 months, followed by a lump sum of $3171.53. Whatever else they might have committed to do, this is the obligation that they bound themselves to honor. It would be disingenuous for them to assert, "Sure, we promised you so much a month, but implicit in that promise was the unstated condition that we'd pay you that much, on that schedule, *unless* we initiated action (i.e., seeking payment of counsel fees) which, at our election, would render that promise a nullity." I will not read the statute in a way that would permit them to do so. "The order confirming the plan shall govern the payment of the debtor's attorney's fees."[25]

The trustee is instructed to pay the balance of debtors' counsel's approved fees in a manner consistent with the binding terms of the debtors' confirmed plan. As outlined above, this means that counsel will receive $153.79/month until the approved fees are completely paid off, in fourteen months.

V. Conclusion

---

("…accrued costs of administration and filing fees, as well as fees due the chapter 13 trustee, [are required] to be disbursed before payments to creditors under the plan").

[25] Shorb v. Bishop (In re Shorb), 101 B.R. 185, 187 (9th Cir. B.A.P. 1989). Notwithstanding that Shorb lends support to this court's determination that counsel's fees are to be paid concurrently with distributions to another creditor, that case is cited for support of the opposing view by Harris, 304 B.R. at 758. This seeming incongruity can be explained by the different procedural posture of Harris, which dealt with objections to confirmation of a plan, rather than a post-confirmation dispute like that at issue here.

9

Counsel's fee application is approved in the amount of $4615.53, with the remaining balance of $2115.53 to be paid by the trustee in accordance with the dictates of this opinion. A separate order to this effect will enter forthwith.

| | |
|---|---|
| July 14, 2009 | /s/ James B. Haines, Jr. |
| Date | James B. Haines, Jr.<br>U.S. Bankruptcy Judge |